THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. EVA CASAZZA *et al.*, Defendants-Appellees.

Third District   No. 3—90—0080

Opinion filed September 5, 1990.

HEIPLE, P.J., dissenting.

Edward Burmila, State's Attorney, of Joliet (Gary F. Gnidovec and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Lawrence H. Hyman and Ralph E. Meczyk, both of Lawrence H. Hyman & Associates, of Chicago, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

The defendants, Eva Casazza, Elizabeth Chartier, and Kenneth Chartier, were charged with unlawful delivery of cannabis and unlawful possession of cannabis (Ill. Rev. Stat. 1989, ch. 56½, pars. 705(a), 707(a), 704(b)). The defendants thereafter filed a motion to suppress certain evidence seized during a search of Kenneth's yacht. Following a hearing, the trial court allowed their motion. The State appeals.

At the suppression hearing, Will County sheriff's department investigator Joseph G. Farmer testified that on September 4, 1989, he was assigned to investigate the death of a 17-year-old boy who had drowned on the evening of September 3 at the Three Rivers Marina in Wilmington, Illinois. Three teenagers informed Farmer that two 40-year-old women had invited them to their 50-foot yacht on the night of September 3. After arriving at the yacht, the teenagers smoked marijuana with the women. The investigator noted that he had received similar information from other sources who told him that on the night in question the drowning victim and six other youths had attended a party on the yacht. The other sources also stated that while on the yacht, the youths had drunk beer and smoked marijuana.

Farmer testified that around 2:30 p.m. on September 4, he and Will County sheriff's department sergeant Lynn Jencon arrived at the marina and located the yacht in question. The officers were met by Elizabeth Chartier. She and others were staying on the boat for the Labor Day weekend. Investigator Farmer explained to Elizabeth that he was investigating the drowning incident and that he had received information that the drowning victim drank beer and smoked marijuana while on the yacht. Farmer then asked Elizabeth if she would consent to a search. She responded that title to the boat was in her husband's name and that the officers could not search it. At that point, Sergeant Jencon advised Elizabeth that he had been in contact with the State's Attorney's office and that a search warrant could be obtained. Jencon also told her that until the warrant was obtained,

she and the other occupants would have to leave the boat.

According to Investigator Farmer, as the occupants of the boat were preparing to leave, he met Kenneth Chartier on the dock. Farmer informed Kenneth of the reason for the investigation and asked him if he would consent to a search of the yacht. Kenneth asked what would happen if he did not consent. Farmer told Kenneth that if he did not sign a search consent form the police "could obtain a warrant" and in the interim he would have to leave the vessel. After considering the matter, Kenneth told the officers that they could search the yacht. Prior to searching, Farmer advised Kenneth of his constitutional rights and of his right to refuse to consent to the search. Kenneth then signed a constitutional rights waiver form and a consent to search form. Thereafter, Farmer conducted a search of the yacht accompanied by Kenneth.

Sergeant Lynn Jencon also testified regarding the circumstances surrounding the search and corroborated much of the testimony of Investigator Farmer. Jencon noted that Farmer advised Elizabeth that they were investigating a drowning death. Elizabeth responded that she was aware of the situation since the youth had been on the boat the previous night. Jencon further stated that after Kenneth signed the consent to search form he accompanied the officers as they conducted their search. According to Jencon, a green leafy material was found in a dresser in the bedroom near the kitchen. Jencon further stated that suspected contraband was also seized from a room occupied by Kenneth.

Based on the foregoing evidence, the trial court concluded that Kenneth's consent to the search had not been voluntarily given. The court further concluded that his consent was vitiated by the threats of the officers that they could obtain a warrant and that he and the occupants of the boat would have to leave in the interim.

On appeal, the State contends that the trial court erroneously concluded that Kenneth's consent to the search was not voluntarily given.

■ ■ To support a search undertaken pursuant to consent, the State must prove by a preponderance of the evidence that the consent was voluntarily given. (*People v. Holliday* (1983), 115 Ill. App. 3d 141, 450 N.E.2d 355.) The voluntary character of the consent presents a question of fact to be resolved from a consideration of the totality of the circumstances. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041; *People v. Griffin* (1987), 158 Ill. App. 3d 46, 510 N.E.2d 1311.) A trial court's determination regarding the voluntariness of the consent will not be disturbed on review un-

less it is clearly unreasonable. *People v. Wahlen* (1982), 111 Ill. App. 3d 194, 443 N.E.2d 728.

■■ Here, the trial court had before it evidence of all the circumstances surrounding the consent, including the officers' threats that they could obtain a warrant and that they would secure the premises in the interim. In addition, the court correctly noted that these threats were made on Labor Day weekend to people who were dwelling on the vessel for the weekend. While we might have decided this issue differently as a trial court, based on the record before us, we are unable to say that the instant trial court's decision was clearly unreasonable.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY, J., concurs.

PRESIDING JUSTICE HEIPLE, dissenting:

Defendants, Eva Casazza, Elizabeth Chartier, and Kenneth Chartier, were charged with the offenses of unlawful delivery of cannabis and unlawful possession of cannabis. Prior to trial, defendants filed a motion to suppress evidence seized during a search of Kenneth Chartier's yacht. Following a hearing, the trial court granted defendants' motion to suppress, ruling that defendants' consent to the search was not voluntary. The State appeals.

Testimony at the suppression hearing revealed that on September 4, 1989, Investigator Joseph Farmer of the Will County sheriff's department was investigating the death of a 17-year-old drowning victim the night before. Investigator Farmer had received information that on the night of September 3, 1989, the victim and several other youths had gone to the Three Rivers Marina for a party on a yacht moored there. The information received also indicated that while on the yacht, the youths drank beer and smoked marijuana. Investigator Farmer and other investigators arrived at the marina on the afternoon of September 4, 1990, and approached the yacht in question. Defendant Elizabeth Chartier met the investigators on the dock and, after being informed of the purpose of their visit, consented to their entry onto the yacht.

Investigator Farmer then explained to Elizabeth that the sheriff's department had been informed that the drowning victim and other youths had been on the yacht the night before drinking beer and

smoking marijuana, and he requested her permission to search the yacht. Elizabeth told Investigator Farmer that the boat was in her husband's name and that she would not consent to a search. At that point, Sergeant Jencon advised Elizabeth that the sheriff's department had been in contact with the State's Attorney's office and that a search warrant could be obtained. Sergeant Jencon also informed her that the individuals on the yacht would have to leave the boat until the warrant was obtained.

As the investigators, Elizabeth and her guests were leaving the yacht, they encountered Kenneth Chartier on the dock. Investigator Farmer informed Kenneth of the information received by the sheriff's department, the reason for their investigation, and their desire to search the boat with Kenneth's consent. Kenneth inquired what would happen if he did not consent, and Investigator Farmer told him a warrant could be obtained. Kenneth then gave his consent for a search of the yacht. Kenneth was advised of his constitutional rights and his right to refuse to consent to the search, and he signed both a constitutional rights form and a consent to search form. Kenneth accompanied the investigators and they boarded the yacht. During the search, evidence was seized which formulated the basis of the criminal charge.

Following presentation of the foregoing evidence, the trial court determined that the consent to search form executed by Kenneth was not freely and voluntarily given. The trial court concluded that Kenneth's consent was vitiated by the threats of the officers that they "would" obtain a search warrant and that the Chartiers and their guests would have to leave the yacht in the interim. The majority supports the trial court decision, stating that based on the evidence before the trial court, its decision was not clearly unreasonable and does not warrant disturbance. I disagree.

The State must prove by a preponderance of the evidence that consent was voluntarily given in order to support a search undertaken pursuant to a consent form. (*People v. Holliday* (1983), 115 Ill. App. 3d 141.) Voluntariness, as it relates to consent searches, is a question of fact to be determined from the totality of all of the circumstances under which consent was given. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041; *People v. Griffin* (1987), 158 Ill. App. 3d 46.) In this instance the circumstances reveal that Kenneth Chartier was properly informed of his rights and voluntarily gave signed consent to a search of his yacht.

The majority concludes that because the investigators informed defendants that a search warrant could be obtained and that the

premises would be secured in the meantime, the trial court reasonably found that consent was not voluntary. However, it has been held that "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." (*Segura v. United States* (1984), 468 U.S. 796, 810, 82 L. Ed. 2d 599, 612, 104 S. Ct. 3380, 3388.) The instant case involves a yacht which was being used as a dwelling for several persons over a holiday weekend; therefore, the reasoning of *Segura* is applicable. The sheriff's department had received information indicating that defendants were hosting a party on their boat at which marijuana was present, and informed Kenneth of accepted procedures to ensure that any potential evidence was not removed from the yacht before a search warrant could be obtained. I do not believe this to be coercive so as to nullify Kenneth's unambiguous, voluntary consent. Accordingly, I dissent.