(No. 70914

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. EVA CASAZZA *et al.*, Appellees.

*Opinion filed October 17, 1991.*

HEIPLE, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Edward A. Burmila, Jr., State's Attorney, of Joliet (Kenneth R. Boyle, John X. Breslin, and Gary F. Gnidovec, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

John Thomas Moran, Jr., of Chicago, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

The State appeals the decision of the appellate court which affirmed the grant by the circuit court of Will County of the motion to suppress of respondents, Eva Casazza, Elizabeth Chartier and Kenneth Chartier.

## BACKGROUND

Respondents were charged with unlawful delivery and possession of cannabis. (Ill. Rev. Stat. 1989, ch. 56½, pars. 705(a), 707(a), 704(b).) Thereafter, respondents moved to suppress the evidence seized during a search of a yacht owned by respondents Chartiers. After an evidentiary hearing, the trial court granted respondents' motion. The appellate court, with one justice dissenting, affirmed the decision of the trial court. 202 Ill. App. 3d 792.

## FACTS

The testimony adduced at the hearing on respondents' motion revealed the following. On the morning of September 4, 1989, officers of the Will County sheriff's department were assigned to investigate the drowning of a juvenile at the Three Rivers Marina in Wilmington, Illinois. The police had received information that the drowning victim and some friends consumed beer and

smoked marijuana with two older women aboard a 50-foot, maroon and white yacht docked at the Three Rivers Marina on the evening of September 3. Before going to the marina, the officers had been instructed by an assistant State's Attorney to locate the yacht owner and request permission to search it. They were further instructed to remove the occupants of the yacht until they obtained a search warrant if the owner did not consent to a search.

The police went to the marina and, upon approaching the yacht in question, were met by Elizabeth Chartier. The officers advised Elizabeth of the reason for their presence and asked to speak with her. Elizabeth then invited the officers aboard the yacht. After advising her of their information as to the youths' use of alcohol and marijuana aboard the yacht the night before, the officers requested permission to search the yacht. Elizabeth informed the officers that the yacht was in her husband's name and that they could not search it.

The officers advised Elizabeth that they either "could" or "would" obtain a search warrant, if necessary, and further that the people aboard the yacht would have to leave the vessel while the officers did so. As the people aboard were leaving the yacht, the officers were met at the boat entrance by Kenneth Chartier. After advising him of the reason for their presence and their information as to the activity aboard the yacht the night before, the officers asked Kenneth for permission to search it. Kenneth then asked what would happen if he did not consent to a search. The officers repeated to Kenneth the advice which they had given to Elizabeth. After requesting a minute to think about it, Kenneth consented to a search of the yacht.

Before searching the yacht, the officers advised Kenneth of his *Miranda* rights and his right to refuse permission to search the yacht. They also presented

Kenneth with a form advising him of his *Miranda* rights and a consent to search form. Kenneth signed both forms after reading them. The officers also advised Kenneth that he could accompany them as they searched the yacht, which he did.

## DISCUSSION

In granting the motion to suppress, the trial court reasoned that the fact the police told Kenneth that the occupants of the yacht would have to leave it if he did not consent to a search vitiated his consent. The court found that the consent was not given freely and voluntarily but under duress. The court also stated that it did not think the police had the right to tell the occupants of the yacht that they had to leave it while the police procured a search warrant.

In affirming the trial court, the appellate court concluded that, while it might have decided the issue differently as a trial court, it could not say, based on the record before it, that the trial court's decision was clearly unreasonable. (202 Ill. App. 3d at 795.) In dissenting, Justice Heiple, citing *Segura v. United States* (1984), 468 U.S. 796, 82 L. Ed. 2d 599, 104 S. Ct. 3380, concluded that the police had merely informed Kenneth of accepted procedures to ensure that evidence was not removed from the yacht before a search warrant was obtained and that this was not coercive so as to nullify Kenneth's voluntary consent. 202 Ill. App. 3d at 797 (Heiple, P.J., dissenting).

The voluntariness of a consent to a police search depends on the totality of the circumstances and it is the State's burden to show by a preponderance of the evidence that the consent was voluntarily given. (*People v. Daugherty* (1987), 161 Ill. App. 3d 394; *People v. Branham* (1985), 137 Ill. App. 3d 896; *People v. Koniecki* (1985), 135 Ill. App. 3d 394.) A trial court's deter-

mination of the voluntariness of a consent will not be disturbed unless it is clearly unreasonable. *People v. DeMorrow* (1974), 59 Ill. 2d 352, 358.

In appealing the decisions below, the State argues that the preponderance of the evidence established that Kenneth voluntarily consented to the search of the yacht. Specifically, the State attacks the trial court's purported reliance for the opposite conclusion upon its findings that: (1) the police told respondents, not that they "could," but that they "would" obtain a search warrant if Kenneth did not consent to a search; and (2) the police also told respondents that, if Kenneth did not consent, they would have to leave the boat until the officers obtained a search warrant.

Preliminarily, we find no need to address the validity of the first finding as a basis for the the trial court's ruling. Notwithstanding that finding, the record reveals that the trial court's *ratio decidendi* was its finding that Kenneth's consent had been coerced by the position taken by the police that the occupants of the yacht would have to leave it if he did not consent to a search. Thus, we need only address the validity of that finding as a basis for the trial court's ruling.

Cutting to the heart of its argument, the State asserts that the conduct of the police was lawful and within the parameters of the fourth amendment as decided in *Segura, Mincey v. Arizona* (1978), 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408, and *Rawlings v. Kentucky* (1980), 448 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556. Specifically, the State relies upon the statement in *Segura* that "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." (*Segura,* 468 U.S. at 810, 82 L. Ed. 2d at 612, 104 S. Ct. at 3388.) The State thus concludes that, as a

matter of law, the conduct of the police in this case cannot be found coercive so as to invalidate Kenneth's consent to the search.

However, the problem with this argument is that only one justice concurred in part IV of Chief Justice Burger's lead opinion in *Segura*, in which the language cited by the State appears. Thus, that portion of *Segura* does not constitute binding precedent upon this or any other State or Federal court.

In reply, the State cites the following language in part I of *Segura*, in which a majority of the justices joined:

> "[W]e conclude that, assuming that there was a *seizure* of all the contents of the petitioners' apartment when agents secured the premises from within, that seizure did not violate the Fourth Amendment. Specifically, we hold that where officers, having probable cause, enter premises, and with probable cause, arrest the occupants who have legitimate possessory interests in its contents and take them into custody and, for no more than the period here involved, secure the premises from within to preserve the status quo while other officers, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment[ ] ***." (Emphasis in original.) (*Segura*, 468 U.S. at 798, 82 L. Ed. 2d at 604, 104 S. Ct. at 3382.)

The State asserts that the foregoing language reveals that the majority joined in the legal conclusion reached in part IV of *Segura* even though they disagreed with its underlying rationale as expressed in part IV.

We cannot agree with the State's interpretation of the import of this language. A careful reading of part IV of *Segura* and the quoted language from part I convinces us that part I was intended to summarize both the legal conclusion reached in part IV and the rationale given therein for that conclusion. Thus, we cannot see how the joining in part I of *Segura*, by the justices who

declined to join part IV, constitutes an agreement with the legal conclusion of part IV but not its rationale.

A more reasonable interpretation as to the reason why the other majority justices joined in the foregoing language of part I is that they did so as the result of oversight. This oversight is understandable when part I is read in its entirety. Such a reading makes clear that part I was intended to be a brief statement of the issues presented in the case and of the holdings thereon in the dispositive portions of the opinion, parts IV and V. That being the case, it is understandable that the majority justices would focus upon parts IV and V and overlook part I. In short, we find that the concurrence in part I by a majority of the Court does not remedy its failure to concur in part IV of the opinion. See Dressler, *A Lesson in Incaution, Overwork and Fatigue: The Judicial Miscraftmanship of Segura v. United States*, 26 Wm. & Mary L. Rev. 375 (1985).

Further in reply to respondents' attack upon *Segura*, the State cites several Federal court cases which have nonetheless followed and adopted part IV of *Segura* to uphold warrantless searches. (See, *e.g., United States v. George* (9th Cir. 1989), 883 F.2d 1407; *United States v. Morales* (11th Cir. 1989), 868 F.2d 1562.) However, we are not likewise persuaded. As respondents point out, a Federal district court's and the government's reliance on part IV of *Segura* has been criticized as based on a mischaracterization of parts of that section of *Segura* as a holding of the Supreme Court. (*United States v. Napue* (7th Cir. 1987), 834 F.2d 1311, 1326 n.16.) We agree with the *Napue* court that part IV of *Segura* has no binding effect upon lower Federal and State courts. (See also *State v. Bolt* (1984), 142 Ariz. 260, 689 P.2d 519.) As such, it is of no avail to the State in defending the police conduct in this case.

Similarly unavailing to the State are the *Mincey* and *Rawlings* cases cited by Chief Justice Burger as support for his conclusion in part IV of *Segura*. In citing those cases, the Chief Justice noted that the Court had not previously had occasion to consider whether the temporary securing of a dwelling to prevent the destruction or removal of evidence violated the fourth amendment where the police had probable cause to believe evidence of criminal activity was on the premises. However, the Chief Justice noted, the Court, in *Mincey* and *Rawlings*, had previously suggested that the securing of premises under such circumstances does not violate the fourth amendment, at least when undertaken to preserve the status quo while a search warrant is being sought. *Segura v. United States* (1984), 468 U.S. 796, 809, 82 L. Ed. 2d 599, 611, 104 S. Ct. 3380, 3387.

The problem with the State's reliance on *Mincey* and *Rawlings*, beyond the fact that they were cited in support of conclusions reached in a part of *Segura* which does not represent the view of the majority of the Supreme Court, is that we disagree with the interpretation of those cases in part IV of *Segura*.

In discussing *Mincey*, Chief Justice Burger stated that the Court had therein "noted with approval" that, to preserve evidence, a police guard had been stationed at the entrance to an apartment in which a shooting had occurred during a drug raid, "even though '[t]here was no indication that evidence would be lost, destroyed, or removed during the time required to obtain a search warrant.' " *Segura*, 468 U.S. at 809, 82 L. Ed. 2d at 611, 104 S. Ct. at 3387, quoting *Mincey v. Arizona* (1978), 437 U.S. 385, 394, 57 L. Ed. 2d 290, 301, 98 S. Ct. 2408, 2414.

In the portion of *Mincey* to which the Chief Justice referred, the Supreme Court addressed the State's argument, *inter alia*, that exigent circumstances justified the

warrantless search at issue. In rejecting that argument, the Court stated that, except for the fact that the offense under investigation was a homicide, there were no exigent circumstances. Moreover, the Court noted the lack of any indication that evidence would be lost, destroyed or removed during the time required to obtain a search warrant and that, "Indeed, the police guard at the apartment minimized that possibility." *Mincey v. Arizona* (1978), 437 U.S. 385, 392-94, 57 L. Ed. 2d 290, 299-301, 98 S. Ct. 2408, 2413-14.

In contrast to Chief Justice Burger, we cannot say that our reading of *Mincey* supports the conclusion that the Court "noted with approval" the police conduct in that case. Rather, we believe that, in noting that the police conduct of guarding the premises had minimized the possibility of evidence-tampering, the Court was merely noting the obvious result of that conduct without either approving or disapproving it. See Dressler, *A Lesson in Incaution, Overwork, and Fatigue: The Judicial Miscraftmanship of Segura v. United States*, 26 Wm. & Mary L. Rev. 375, 413 (1985).

Assuming, *arguendo*, that the *Mincey* Court actually approved of the police conduct at issue, the police conduct, as well as the surrounding circumstances, in this case are fundamentally different from those in *Mincey*. Thus, *Mincey* is factually distinguishable from this case and of no avail to the State here.

In discussing *Rawlings*, Chief Justice Burger noted that, although officers secured, from within, the home of a person for whom they had an arrest warrant, and detained all occupants of the home while they obtained a search warrant, the Court did not question the admissibility of evidence discovered pursuant to the later-issued search warrant. (*Segura*, 468 U.S. at 809, 82 L. Ed. 2d at 611, 104 S. Ct. at 3387-88.) However, the *Rawlings* Court never squarely addressed the legality of the police

conduct in that case, *i.e.*, securing the premises from within and detaining its occupants after detecting the smell of marijuana, which was comparable to the police conduct in *Segura* and in this case.

In the first part of *Rawlings*, the Court held that the petitioner, one of the persons detained by the police, lacked a reasonable expectation of privacy in the purse of his female companion so as to allow him to object to a search of the purse. (*Rawlings v. Kentucky* (1980), 448 U.S. 98, 104-06, 65 L. Ed. 2d 633, 641-42, 100 S. Ct. 2556, 2561-62.) In the second part of *Rawlings*, the only part involving the legality of police conduct comparable to that here, the Court held that, even assuming that the detention of the occupants of the premises raided was illegal, the petitioner's incriminating statements were admissible against him because they were not the product of the detention. (*Rawlings*, 448 U.S. at 106-10, 65 L. Ed. 2d at 642-45, 100 S. Ct. at 2562-64.) In the third part of *Rawlings*, the Court held that the search of the petitioner's person following his admission of ownership of the drugs found in his companion's purse was incident to a lawful arrest. *Rawlings*, 448 U.S. at 110-11, 65 L. Ed. 2d at 645-46, 100 S. Ct. at 2564.

As the *Rawlings* Court assumed the illegality of the police conduct in that case, we are hardpressed to see how *Rawlings* can be of any support for the legality of the police conduct in this case. See Dressler, *A Lesson in Incaution, Overwork, and Fatigue: The Judicial Miscraftmanship of Segura v. United States*, 26 Wm. & Mary L. Rev. 375, 414 (1985).

Finally, we do not find *Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586, of any assistance to the State. In *Sanders*, the State sought to justify the warrantless search of a suitcase that the police had probable cause to believe contained marijuana on the ground, *inter alia*, that the only result of waiting

for a warrant would have been inconvenience to all concerned. The Supreme Court observed that those defendants who find the inconvenience of waiting for the issuance of a search warrant unacceptable may avoid it simply by consenting to a warrantless search. *Sanders*, 442 U.S. at 764 n.12, 61 L. Ed. 2d at 245 n.12, 99 S. Ct. at 2593 n.12.

The State cites the Court's observation in arguing that the police in this case merely explained the available options to Kenneth and permitted him to choose between them. We do not find the cited observation applicable here because, unlike this case, there was no issue in *Sanders* concerning the authority of the police to seize the suitcase which was the subject of the warrantless search. Here, in contrast, it was the police's illegal representation that they had authority to seize the yacht which, the trial court correctly found, vitiated the voluntariness of Kenneth's consent to the search. *Sanders* does not compel a reversal of the judgments herein.

In view of our conclusion that *Segura, Mincey, Rawlings*, and *Sanders* provide no support for the police conduct in this case, we cannot find the trial court's determination as to the voluntariness of Kenneth's consent to the warrantless search of his yacht clearly unreasonable. Therefore, we cannot disturb that determination. *People v. DeMorrow* (1974), 59 Ill. 2d 352, 358.

For all of the reasons stated herein, the judgments of the circuit court and the appellate court sustaining respondents' motion to suppress are affirmed.

*Judgments affirmed.*

JUSTICE HEIPLE took no part in the consideration or decision of this case.