FIRST DIVISION
 May 19, 1997

No. 1-94-1708

THE PEOPLE OF THE STATE OF ILLINOIS,

 Plaintiff-Appellee,

 v.

SERVELION LLANOS,

 Defendant-Appellant.)
)
)
)
)
)
)
)
)Appeal from the
Circuit Court of
Cook County.

No. 93 CR 23230

Honorable
Vincent Gaughan,
Judge Presiding. 

 JUSTICE O'BRIEN delivered the opinion of the court:

 Defendant, Servelion Llanos, appeals from a guilty verdict
entered after a bench trial on drug possession and distribution
charges. We affirm.
 On September 13, 1993, Chicago Police Officer Salvatore
Inglima sought a search warrant for an alleged drug dealer named
"Jose" and the premises at 3417 West Evergreen, Chicago. The
complaint for search warrant was based upon a tip from a reliable
confidential informant that the informant had purchased cocaine
from Jose at that address. The complaint further stated that,
following the exchange, Jose "placed the remaining bags of cocaine
*** into a box." A warrant was issued authorizing a search of the
 "person of 'Jose', a male, white Hispanic, dark, wavy
 hair, dark eyes, olive comlexion, approximately 6'0",
 160-170 lbs., thin build and the 2nd floor rear apartment
 at 3417 West Evergreen Street, Chicago, Cook County,
 Illinois."

The warrant further authorized seizure of the following
instruments, articles and things:
 "Cocaine, Cocaine paraphernialia, co-mingled United
 States Currency, proof of residency and any other items
 in direct violation of Illinois Controlled Substance Act
 or any items which have been used in the comission of, or
 which constitute evidence of the offense of Illinois
 Compiled Statutes, Chapter 720  570/402, Possession of a
 Controlled Substance." (Emphasis original.)

 On September 14, 1993, Officer Inglima and other members of
the Chicago Police Department Organized Crime Division Task Force
staked out the two-story apartment building located at 3417 West
Evergreen in preparation to execute the search warrant. While on
the stakeout the officers observed the defendant carry a gray metal
box into the building. Some 15 minutes later, the officers entered
the apartment building and proceeded to the second floor. There
they encountered Jose Gonzalez exiting the rear apartment. The
officers placed him in custody and began to search the apartment. 
 The defendant was found seated at the kitchen table with the
closed tool box on the table in front of him. Officer Inglima
performed a protective pat down search of defendant, then opened
the tool box and recovered from it a brick-shaped package
containing approximately one kilogram of cocaine. Officer Inglima
then informed defendant that he was under arrest and advised him of
his Miranda rights. Officer Armando Ramirez translated the warning
into Spanish. As the search proceeded, Officer Ramirez spoke to
defendant in Spanish and obtained written consent to search the
defendant's apartment located at 4647 North Keystone Avenue in
Chicago. There, the officers discovered two additional brick-
shaped packages containing a total of approximately two kilograms
of cocaine.
 The defendant was charged with possession with intent to
deliver all three kilograms of cocaine. Defendant's subsequent
motion to quash his arrest and suppress the evidence obtained in
the two searches was denied. Following an evidentiary hearing the
trial court concluded that Officer Inglima, in opening the tool
box, was conducting a protective search of the box and had a right
to do so for his own protection, and that he had the right to
search the defendant pursuant to section 108-9 of the Code of
Criminal Procedure of 1963 (725 ILCS 5/108-9 (West 1991)), which
allows police to detain and search persons on the premises at the
time the search warrant is executed. The court further found that
the defendant's consent to the search of his apartment was
voluntarily given. 
 After a bench trial, the defendant was found guilty of
possession with intent to deliver approximatley three kilograms of
cocaine and sentenced to 17 years in the Illinois Department of
Corrections. This appeal followed.
 On appeal, we are asked to determine whether the trial court
erred when it denied defendant's motion to suppress (1) evidence
seized from a tool box owned by defendant during a warrant search
of the person and premises of another and (2) evidence seized from
defendant's own apartment pursuant to a consent search. 
 I
 A trial court's determination on a motion to suppress will not
be overturned unless it is manifestly erroneous. People v.
Redmiles, 191 Ill. App. 3d 198, 202, 547 N.E.2d 724. A reviewing
court may look to both trial testimony and testimony presented at
the suppression hearing in reviewing the denial of a motion to
suppress. People v. Turner, 259 Ill. App. 3d 979, 989, 631 N.E.2d
1236 (1994). 
 On appeal, the State argues, inter alia, that the toolbox was
implictly covered by the warrant because, once brought into the
area covered by the warrant, the toolbox assumed the character of
any other container in the apartment that could conceal narcotics.
In support of its argument, the State cites United States v. Ross,
456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), which
stated:
 "A lawful search of fixed premises generally extends
 to the entire area in which the object of the search may
 be found and is not limited by the possibility that
 separate acts of entry or opening may be required to
 complete the search." Ross, 456 U.S. at 820-21, 72 L.
 Ed. 2d at 591, 102 S. Ct. at 2170-71.

 Defendant counters that his mere presence in Jose's apartment
when police executed the warrant did not justify a search of the
toolbox. In support of his argument, the defendant principally
relies upon People v. Gross, 124 Ill. App. 3d 1036, 465 N.E.2d 119
(1984). Defendant's reliance is misplaced.
 The Gross court suppressed contraband obtained from the purse
of a social guest present in an apartment during a warrant search
in part on grounds the police knew the purse was not part of the
premises described in the search warrant. 124 Ill. App. 3d at
1040-41, 465 N.E.2d at 122. While one might agree, for the sake of
argument, "that a woman's purse occupies a peculiar status" as "an
extension of the person" whose form is "only a matter of
expediency, custom and style development over the centuries" and in
which a woman expects "supreme privacy" (United States v. Teller,
397 F.2d 494, 496 (N.D. Ill. 1968), cert. denied, 393 U.S. 937, 21
L. Ed. 2d 273, 89 S. Ct. 299 (1968)), we decline to attach the same
status to a toolbox. A person does not "wear" a toolbox in the
same manner that a woman would "wear" a handbag--a toolbox is not
typically a repository for intimate personal effects nor is it
selected to harmonize with the carrier's attire and personal
appearance. Teller, 397 F.2d at 497. And, unlike a purse, it
would not have been unreasonable for Officer Inglima to believe
that Jose Gonzalez shared use of the toolbox with defendant--a
toolbox is frequently an object over which two or more more persons
share authority. People v. James, 163 Ill. 2d 302, 645 N.E.2d 195
(1994). Indeed, the defendant himself testified at the hearing on
the motion to suppress that the toolbox merely contained tools and
that he had gone to Jose's apartment "because he had been helping
to fix my car the day before." Defendant's own testimony suggests
that Jose Gonzalez and defendant shared use of the toolbox. 
 We conclude, therefore, that the mere fact that Officer
Inglima observed defendant enter the subject premises with the
toolbox and had it in his possession at the time the search was
executed did not preclude a search thereof under Gross. Rather, we
agree with the State's assertion that, under the circumstances
presented, the toolbox was implictly covered by the warrant
because, once brought into the area covered by the warrant, the
toolbox assumed the character of any other container in the
apartment that could conceal narcotics. We find this to be
particularly true where, as here, the officer had been informed,
and had in turn informed the court issuing the search warrant, that
the contraband being sought was stored in a "box." Accordingly,
Officer Inglima's search of the toolbox was permissible under Ross.
 Having found that Officer Inglima's search of the toolbox was
implicitly authorized by the search warrant, we decline to address
the State's additional arguments on appeal that the search was
permissible (i) because there was individualized suspicion
regarding the contents of the metal toolbox--it being the type of
container that could reasonably be expected to contain illegal
drugs in an apartment known for drug trafficking, (ii) as a frisk
for weapons pursuant to Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889
88 S. Ct. 1868 (1968), or (iii) as part of a protective sweep
authorized by section 108-9 of the Code of Criminal Procedure of
1963 (725 ILCS 5/108-9 (West 1992)).
 II 
 We are next asked to determine whether the defendant's
subsequent consent to search his home was voluntary. In Illinois,
the trial court's finding of voluntariness is not reversible error
unless it is clearly unreasonable. People v. Casazza, 144 Ill. 2d
414, 417, 581 N.E.2d 651, 653 (1991); People v. Odom, 83 Ill. App.
3d 1022, 1027, 404 N.E.2d 997, 1002 (1980). Voluntariness of the
consent depends on the totality of circumstances under which the
consent was given, and it is the State's burden to show, by a
preponderance of the evidence, that the consent was voluntarily
given. Schneckloth v. Bustamonte, 412 U.S. 218, 248-49, 36 L. Ed.
2d 854, 875, 93 S. Ct. 2041, 2059 (1973); People v. DeMorrow, 59
Ill. 2d 352, 320 N.E.2d 1 (1974). 
 According to Officer Ramirez, Llanos was found seated at the
kitchen table with the toolbox in front of him. Upon discovering
the toolbox contained cocaine, Llanos was immediately arrested,
"Mirandized", and placed in handcuffs. Officer Ramirez also
testified that, following Llanos' arrest, he explained the written
consent form to Llanos in Spanish, told him he did not have to sign
it, and gave Llanos the opportunity to read the document. 
Ramirez's testimony was corroborated by Officer Inglima.
 Defendant's version of events was somewhat different. 
Defendant testified that he was not sitting at the kitchen table
when police arrived but, rather, was descending the stairs outside
the apartment and that the officers took him into Jose's apartment
at gunpoint. The defendant also testified that although an officer
spoke to him in Spanish, he was never told that he was under arrest
or informed that he had a right not to consent to the search of his
apartment. The defendant further claimed that he was told to sign
a blank sheet of paper, that when he was told to sign the paper the
police had Jose Gonzalez on the floor and were stomping on his
head, that he himself was surrounded by three officers, and that he
believed he would be beaten if he did not sign. Upon cross-
examination by the State, however, the defendant admitted that the
form was not blank when he signed it. Instead, defendant claimed
that he was not given an opportunity to read the form but simply
told to "sign there."
 The determination of the credibility of the witnesses is
strictly within the purview of the trier of fact. People v. Agee,
100 Ill. App. 3d 878, 883-84, 427 N.E.2d 244, 248 (1981), citing
People v. Manion, 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320
(1977). Thus the trial court, sitting as trier of fact in a
suppression hearing, is not required to accept the defendant's
testimony as the unadulerated truth. As between the testimony of
Officer Ramirez and the defendant, the trial court apparently found
Ramirez to be more credible than defendant. Based upon Ramirez's
version of events, the trial court reasonably concluded that the
defendant had voluntarily consented to a search of his apartment. 
Accordingly, we affirm the trial court's denial of defendant's
motion to suppress the two kilograms of cocaine seized from
defendant's apartment.
 Because the three kilograms of cocaine were properly admitted
into evidence, we affirm the defendent's conviction. As part of
our judgment, we award the State $100 for defending this appeal
(People v. Nicholls, 71 Ill. 2d 166, 374 N.E.2d 194 (1978)), and an
additional $50 for oral argument (People v. Agnew, 105 Ill. 2d 275,
473 N.E.2d 1319 (1985)). 
 Finally, because we have concluded herein that police properly
searched the toolbox, defendant's arrest was not illegal. Thus, we
need not determine whether Llanos' consent to search was obtained
without exploitation of an illegal arrest. People v. Odom, 83 Ill.
App. 3d 1022, 1027, 404 N.E.2d 997, 1002 (1980). 
 Affirmed.
 HOFFMAN, J., and THEIS, J., concur.