NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230207-U

NO. 4-23-0207

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| DANNY RANDALL JR., | ) | No. 21CF484 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, finding defendant voluntarily consented to a search of his vehicle.

¶ 2     Defendant, Danny Randall Jr., was convicted at a stipulated bench trial of (1) being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2020)), (2) armed violence (*id*. § 33A-2(a)), and (3) possession with the intent to deliver a controlled substance (720 ILCS 570/401(a)(2)(B) (West 2020)). On appeal, defendant argues his fourth amendment rights (U.S. Const., amend. IV) were violated when police officers performed a warrantless and suspicionless search of his person and vehicle without his consent. Alternatively, defendant argues the trial court erred in (1) finding defendant had consented to the search of his vehicle and (2) applying the good-faith exception to the exclusionary rule because law enforcement was at fault by failing to confirm defendant's parole status. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4           In March 2021, defendant was charged by indictment with (1) being an armed habitual criminal for possessing a firearm, a .40-caliber handgun, after having been convicted of home invasion and the manufacture and delivery of heroin (720 ILCS 5/24-1.7(a) (West 2020)); (2) armed violence for possessing said firearm while in possession of and with the intent to deliver cocaine (*id.* § 33A-2(a)); (3) possession with intent to deliver a controlled substance, namely 100 grams or more but less than 400 grams of cocaine (720 ILCS 570/401(a)(2)(B) (West 2020)); (4) possession with intent to deliver a controlled substance, namely 1 gram or more but less than 15 grams of heroin (*id.* § 401(c)(1)); (5) possession with intent to deliver a controlled substance, namely 10 pills or less of a substance containing methylenedioxymethamphetamine (commonly referred to as MDMA or ecstasy) (*id.* § 401(d)); (6) possession of a controlled substance for the cocaine (*id.* § 402(a)(2)(B)); (7) possession of a controlled substance for the heroin (*id.* § 402(c)); (8) possession of a controlled substance for the ecstasy (*id.* § 402(c)); (9) possession of a stolen firearm (720 ILCS 5/24-3.8(a) (West 2020)); (10) unlawful use of weapons by a felon for being convicted of manufacture and delivery of a controlled substance, a felony, while possessing the .40-caliber handgun (*id.* § 24-1.1(a)); and (11) unlawful use of weapons by a felon for being convicted of manufacture and delivery of a controlled substance, a felony, while possessing .40-caliber rounds of live ammunition (*id.* § 24-1.1(a)).

¶ 5           In April 2021, defendant filed a motion to suppress evidence from his arrest on March 16, 2021. A hearing on defendant's motion occurred in August 2021.

¶ 6           Jeremiah Cizerle testified he had been a police officer with the Rockford Police Department for 15 years. Cizerle was on patrol when he pulled his police vehicle into the Circle

K gas station. He observed a vehicle parked at the gas station with tinted windows and no front license plate. After 5 to 10 minutes, the vehicle left the gas station, and Cizerle followed it. He performed a traffic stop for the missing front license plate and tinted windows. Cizerle recalled defendant giving his partner, Adam Ceja, permission to search the vehicle, but he could not recall specifically what Ceja had asked or what defendant had stated. He recalled defendant was not in handcuffs at the time. Cizerle participated in the search of defendant's vehicle and located a loaded handgun under the center console. Cizerle also observed a bag of cannabis in plain sight in the cup holder. Additionally, Cizerle found cocaine, heroin, ecstasy, and cannabis under the center console.

¶ 7        Ceja, an eight-year veteran of the Rockford Police Department, testified that when he and his partner arrived at the Circle K gas station, he observed defendant in the driver's seat of a vehicle. During the subsequent traffic stop, Ceja asked defendant if he could search the vehicle, and defendant said, " 'Sure.' " Ceja asked defendant if he was still on parole, and defendant said he was.

¶ 8        On cross-examination, Cizerle stated he ran a search of the vehicle registration and learned the vehicle belonged to defendant. A Law Enforcement Agencies Data System (LEADS) history showed defendant was on parole. When the vehicle left the gas station, Cizerle positively identified the driver as defendant. Cizerle further stated he heard Ceja ask defendant if he was on parole and defendant replied that he was and that there was cannabis in the vehicle. Cizerle testified that when an individual is on parole, they are subject to law enforcement searches of their person and vehicle. Cizerle stated, after defendant's arrest, they learned his parole had actually expired on March 15, 2021.

¶ 9        Defendant testified that Ceja asked him if he was on parole and he said he was not. He denied giving Ceja permission to search his vehicle. On cross-examination, defendant was asked if he told officers " 'I get off parole next month.' " He stated he told officers he "got off parole before; last—last month." When asked if he had told Detective Terry Hayes that he " 'g[o]t off parole next month,' " defendant did not recall.

¶ 10        The trial court admitted two video and audio recordings from the traffic stop. The matter was adjourned until the court could review the exhibits.

¶ 11        Our review of the recordings from a dash mounted camera indicates there is only audio from inside the police vehicle and not from the officers themselves. The video showed Ceja approach defendant's vehicle on the driver's side and Cizerle approach on the passenger side. Within approximately 30 seconds of Ceja engaging with defendant in the driver's seat, defendant stepped out of the vehicle and was searched by both officers. Less than a minute later, Ceja began searching the vehicle. Defendant remained near the rear of the vehicle while officers conducted a search inside. Approximately two minutes later, defendant was handcuffed and placed in the back seat of Ceja's police vehicle. The video and audio recording of the rear seat of the police vehicle demonstrated defendant was emotionally upset, apparently regarding the circumstances of his arrest. Defendant, for example, stated he was just trying to "take care of [his] family" and "not trying to hurt anybody." Defendant stated he had a newborn and asked officers to move his car so no one could see that he had been arrested.

¶ 12        A second dash mounted recording from an unspecified officer's police vehicle added no material information and showed only a brief portion of the start of the vehicle search.

¶ 13        After the trial court reviewed the recordings, the State moved for a directed finding. The court denied the State's motion.

¶ 14        Upon resuming the hearing, the State called Detective Terry Hayes to testify. Hayes stated he worked with the Illinois State Police Line Area Narcotics Team investigating narcotics and weapons dealers and traffickers. When asked about interviewing defendant after his arrest, defendant objected to the question as beyond the scope of his motion to suppress. The trial court overruled defendant's objection and allowed Hayes to continue testifying for the purpose of impeaching defendant's testimony. The court admitted a video and audio recording of Hayes's interview with defendant.

¶ 15        The recording of defendant's statements to Hayes showed that after defendant was read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), he stated the "officer asked if I was on parole, I said yeah." Moments later, defendant stated, "I get off parole next month."

¶ 16        The State called Parole Agent Shane Ernst, who testified he monitored defendant's parole. The trial court admitted a copy of defendant's mandatory supervised release agreement from December 13, 2018, over defendant's objection. Ernst stated defendant was subject to searches of his person, residence, vehicle, and personal property at any time by law enforcement as a condition of his parole. On cross-examination, Ernst stated defendant was not on parole on March 16, 2021.

¶ 17        The trial court asked Ernst whether defendant had been informed his parole had ended on March 15, 2021. Ernst stated he believed he was off work that day, so he would not have communicated that information to defendant. Ernst stated a letter indicating defendant's parole had ended on March 15, 2021, was sent via mail on March 17, 2021. Ernst recalled defendant had been the subject of a hearing *in absentia* for an alleged parole violation wherein the Illinois Prisoner Review Board found no violation. Ernst believed the Illinois Prisoner

Review Board modified defendant's parole end date at that hearing, but, because defendant was not present, he would not have learned his parole end date was modified from December 14, 2021, to March 15, 2021.

¶ 18 The trial court found the search of defendant's vehicle was legal and that defendant had consented to the search. The court found the officers acted in good faith and that their testimony was more credible than defendant's. The court stated it believed defendant had not told Cizerle and Ceja he was not on parole because he said the opposite during his interview with Hayes. The court noted that, while Ceja was searching the vehicle, defendant calmly stayed with Cizerle at the rear of the car, showing no signs of agitation or protestation with the search. The court said, "I believe [defendant stood there calmly] because he believed he was on parole at the time." The court denied defendant's motion to suppress.

¶ 19 Defendant subsequently waived a jury and proceeded to a stipulated bench trial on three counts from the indictment—being an armed habitual criminal, armed violence, and possession with the intent to deliver a controlled substance—with an agreed sentence of 30 years' imprisonment on each count, to run concurrently. The trial court entered judgments of guilt for being an armed habitual criminal, armed violence, and possession with the intent to deliver and sentenced defendant to 30 years' imprisonment for each conviction, to be served concurrently.

¶ 20 This appeal followed.

¶ 21 II. ANALYSIS

¶ 22 On appeal, defendant contends his fourth amendment rights were violated when police officers performed a warrantless and suspicionless search of his person and vehicle without his consent because he was, in fact, not on parole. Alternatively, defendant argues the

trial court erred in (1) finding defendant had consented to the search of his vehicle and (2) applying the good-faith exception because law enforcement was at fault by failing to confirm defendant was still on parole. He claims the exclusionary rule should apply to deter future misconduct by law enforcement.

¶ 23    A reviewing court applies a two-part standard of review of a trial court's ruling on a motion to suppress. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006); *Ornelas v. United States*, 517 U.S. 690, 699 (1996). The court's factual findings are given great deference and will only be reversed when they are against the manifest weight of the evidence. *Luedemann*, 222 Ill. 2d at 542. "A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *People v. Peterson*, 2017 IL 120331, ¶ 39. "If the reviewing court accepts the trial court's factual findings, it conducts a *de novo* review of whether suppression was appropriate under those facts." *People v. Manzo*, 2018 IL 122761, ¶ 25.

¶ 24    Defendant's first contention is that because he was not on parole at the time the officers searched his car, the search was a warrantless and suspicionless search. After officers stopped defendant, they immediately asked him if he owned the vehicle, whether he was still on parole, if anything illegal was in the vehicle, and if they could search the vehicle. Defendant argues the officers did not establish probable cause to search either defendant's person or his vehicle. See *People v. Hill*, 2020 IL 124595, ¶ 22 ("While a warrant is not required for a search of an automobile, officers must nevertheless have probable cause to search the vehicle.").

¶ 25    The State counters that defendant's affirmative consent to a search of his vehicle allowed officers to conduct a search regardless of his parole status. Defendant rebuts the State's

contention by arguing his consent was coerced and cites *Bumper v. North Carolina*, 391 U.S. 543 (1968).

¶ 26    In *Bumper*, police officers came to the petitioner's home and were met by his grandmother. *Id.* at 546. An officer announced he had a search warrant for the home, and the petitioner's grandmother gave consent to a search of the home. *Id.* However, the State never established a warrant to search the petitioner's home ever existed. *Id.* at 549-50. The court in *Bumper* stated, "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Id.*

¶ 27    We do not find *Bumper* applicable here. In this case, Ceja did not tell defendant he was on parole and therefore did not predicate the search of defendant's person or vehicle on defendant's parole status. Rather, the officers simply asked defendant if he was on parole. Indeed, as an ordinary matter, " '[t]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.' " *People v. Wilson*, 228 Ill. 2d 35, 52 (2008) (quoting *Samson v. California*, 547 U.S. 843, 857 (2006)). Here, defendant was not on parole on March 16, 2021, as his parole period had expired the day before. Defendant denied telling officers he was on parole, but the evidence showed he did, in fact, state he was on parole, even though he was mistaken. Regardless of defendant's mistaken belief, the officers in this case, unlike in *Bumper*, did not falsely claim to have the authority to search defendant's vehicle. Therefore, we do not find the officers coerced defendant into searching his person or vehicle based on upon his parole status.

¶ 28 While the search of defendant's vehicle was not coerced, the State must still prove by a preponderance of the evidence defendant's consent to search his vehicle was voluntarily given. *People v. Casazza*, 144 Ill. 2d 414, 417 (1991). The voluntariness of defendant's consent is determined by the totality of the circumstances. *Id.* "A trial court's determination of the voluntariness of a consent will not be disturbed unless it is clearly unreasonable." *Id.* at 417-18.

¶ 29 According to the officers, when asked if they could search his vehicle, defendant said, " 'Sure.' " According to defendant, he did not consent. However, the trial court found defendant was not credible. A reviewing court affords great deference to the trial court in motion to suppress hearings. *People v. Melock*, 149 Ill. 2d 423, 432 (1992). "For purposes of motions to suppress, the trial court is in the best position to determine the credibility of witnesses, to weigh testimony, and to resolve conflicts in testimony because it has heard the testimony and observed the demeanor of the witnesses." *People v. Rivas*, 302 Ill. App. 3d 421, 436-37 (1998).

¶ 30 The trial court was in the best position to judge the credibility of the witnesses and chose to believe the officers. Both Ceja and Cizerle gave consistent testimony. This consistency, coupled with the court's suspicion that defendant had lied about whether he thought he was still on parole, supported the court's determination that defendant lacked credibility. Considering the totality of the circumstances, it was reasonable for the court to conclude defendant had consented to the search, as nothing in the record supports a finding that defendant's consent was involuntary. Because we find defendant had consented to the search of his vehicle, we need not address whether the exclusionary rule applies.

¶ 31 III. CONCLUSION

¶ 32 For the reasons stated, we affirm the trial court's judgment.

¶ 33 Affirmed.