STATE OF NEBRASKA, APPELLANT, V. DIANE M. WILMART, ALSO
KNOWN AS DIANE M. CUNNINGHAM, APPELLEE.

450 N.W.2d 703

Filed January 26, 1990.   No. 89-1358.

Larry J. Karel, Colfax County Attorney, for appellant.

David J. Warnemunde, of Moyer, Moyer, Egley, Fullner &
Warnemunde, for appellee.

CAPORALE, J.

This is an interlocutory appeal to a single judge of this court
taken by the plaintiff State pursuant to the provisions of Neb.
Rev. Stat. § 29-824 (Reissue 1989). The State assigns as error
the district court's sustainment of defendant-appellee Diane M.
Wilmart's motion to suppress certain evidence as hereinafter
described. The decision of the district court is affirmed.

At 9:30 p.m. on December 29, 1988, two armed plainclothes
officers and two armed uniformed officers presented
themselves at Wilmart's place of employment in Colfax County.
One of the officers and a representative of the employer
summoned Wilmart from the production line on which she was
working. Upon leaving the production line, Wilmart and the
four officers convened in one of the employer's rooms.

One of the officers told Wilmart that a search warrant
executed at her home in Washington County had resulted in the
seizure of controlled substances and asked whether they might
search her, her property, and her vehicle. Wilmart responded by
inquiring whether she could speak with an attorney prior to
giving her consent. Notwithstanding that one of the officers
testified Wilmart was not free to leave from the moment she
was summoned from the production line, she was told that she
was not under arrest and that she did not then have the right to
an attorney. Wilmart thereupon asked what would happen if
she did not give her consent and was informed that "she did not
have to give her consent, it was not required, and if she didn't,
then we would obtain a search warrant."

In fact, the testifying officer had in his possession either the original or a copy of a warrant issued by the district court for Washington County, which authorized any Nebraska law enforcement officer to search, inter alia, Wilmart's person, clothing, and purse. The officer did not know whether the document in his possession was the warrant which had been executed in Washington County. In any event, after she asked a number of times what would happen if she did not sign the consent form and was given the same answer, Wilmart finally orally agreed to be searched and then, at 9:45 p.m., signed a form reciting in part:

> I AM GIVING THIS WRITTEN PERMISSION to these [officers] freely and voluntarily, without any threats or promises having been made to me, and after having been informed by these officers that I have the right to refuse to permit this search and seizure, and that any property seized may be used against me in the event of prosecution.

Wilmart and the four officers next proceeded to the employer's locker room. The testifying officer guessed this occurred an hour after Wilmart had first been approached. There, Wilmart unlocked and opened a locker, reached in and grabbed a purse, put her arms around it, and began yelling that the purse was hers and that the officers could not have it. According to the testifying officer, Wilmart was at that point "grabbed on either side by two of the other officers and I then reached and grabbed her purse and took it away from her." According to the testifying officer, this was done because of, "number one, the possibility of controlled substances, which was why we were there, and also the possibility of a weapon." After the purse was taken from her, Wilmart was asked if she was withdrawing her consent to the search. Wilmart initially refused to answer, and the question was therefore repeated a number of times. Wilmart finally asked what would happen if she withdrew her consent, and the testifying officer told her that "she did not have to give her consent, but if she didn't then we would get a search warrant." According to the testifying officer, the situation during this exchange "was very tense," but after a time "things had calmed down," and Wilmart

eventually said they still had her consent to search.

The testifying officer then looked in the purse and found a vial containing a white powder which he believed to be a controlled substance. After searching the locker and finding nothing of interest, he next "[o]fficially informed [Wilmart] that she was under arrest" and had her empty her pockets. He observed that in the process Wilmart "roll[ed] something into her left-hand front pants pocket." The testifying officer thereupon "reached over and unrolled the pocket and took another vial."

Subsequent laboratory analysis of two vials, presumably those removed from Wilmart's purse and person, revealed they contained methamphetamine, a controlled substance as defined by Neb. Rev. Stat. § 28-405 [Schedule II(c)(3)] (Reissue 1989). Wilmart was subsequently charged with, among other things, possessing methamphetamine with the intent to distribute it in violation of Neb. Rev. Stat. § 28-416 (Cum. Supp. 1988).

When asked why the warrant was not executed, the testifying officer replied: "Simply because we had her consent and the warrant was unnecessary."

Although in the mind of the testifying officer Wilmart was not under arrest until she was "officially" told she was, the reality is that she was in the officers' custody and thereby deprived of her freedom from the moment she was summoned from her employer's production line; she was thus under arrest from and after that instant. *State v. White*, 209 Neb. 218, 306 N.W.2d 906 (1981).

While the State correctly argues that whether under arrest or not Wilmart was not entitled to the *Miranda* warnings because she was being searched, not interrogated, *State v. Packett*, 207 Neb. 202, 297 N.W.2d 762 (1980), and *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), that is not the question. Rather, the question is how the officers' refusal to permit Wilmart to consult an attorney bears on the voluntariness of her consent to be searched. See, *Schneckloth v. Bustamonte, supra*; *Scott v. State*, 253 Ga. 147, 317 S.E.2d 830 (1984).

The first inquiry therefore becomes whether the officers'

search was authorized by Wilmart's consent. In order for a consent to a search or seizure to be effective, it must be a free and unconstrained choice and not the product of an overborne will. *State v. Horn*, 218 Neb. 524, 357 N.W.2d 437 (1984). Whether a consent to search was given voluntarily is to be determined from the totality of the circumstances surrounding it. *State v. Bowen*, 232 Neb. 725, 442 N.W.2d 209 (1989). Therefore, resolution of the question as to whether Wilmart's consent was voluntary depends upon the interpretation given the facts surrounding such consent. The applicable canon in that regard is that a trial court's ruling on a motion to suppress will be upheld unless its findings of fact are clearly wrong. *State v. Robinson*, 233 Neb. 729, 448 N.W.2d 386 (1989). This is so because the trial court has observed the witnesses and made an assessment as to their credibility based in part on that observation. See *State v. Marcotte*, 233 Neb. 533, 446 N.W.2d 228 (1989).

Implicit in the district court's ruling is the factual finding that Wilmart's consent was the result of an overborne will and thus not voluntary. Given the combination of facts that Wilmart was confronted by four armed officers at premises she did not control, that she was not permitted to consult an attorney, that she vacillated as to whether to permit the officers to search, and that her purse was forcibly taken from her while she was held by two of the officers, it cannot be said the district court's finding in this regard is clearly wrong.

The State argues, however, that the foregoing determination does not end the matter, for discovery of the questioned vials was inevitable in any event. The inevitable discovery doctrine furnishes an exception to the exclusionary rule by providing that material obtained as the result of police misconduct is nonetheless admissible if the prosecution shows by a preponderance of the evidence that the challenged material would have been produced or obtained by proper police investigation entirely independent of the misconduct. *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989); *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984).

The State argues that the officers in this case at all relevant

times had in their possession a warrant which empowered them to conduct precisely the same search they accomplished on the basis of a consent which proves to have been invalid. The State concludes from that circumstance that the offending vials would ultimately have been properly discovered and lawfully seized from Wilmart's person and purse entirely independent of the officers' misconduct.

What the State necessarily assumes in reaching its conclusion is that but for the invalid consent, the officers would have executed the warrant and would have done so in a manner which would have precluded Wilmart from dispossessing herself of the vials before they were lawfully discovered and seized. The dispositive question, however, is whether the district court was obligated to find as a matter of fact that which the State supposes. The district court was not so obligated.

The testifying officer explained only that the warrant was not executed because Wilmart consented to a search and that the execution of the warrant was therefore unnecessary. No officer testified that if Wilmart had withheld her consent, or having once given it withdrew it before the controlled substance was found, the warrant would in fact have been executed. It is significant that in answering Wilmart's inquiries as to what would happen if she refused to consent to a search, and after having given it, what would happen if she withdrew it, she was told not that it would make no difference because the officers had a search warrant in their possession and they would proceed to execute it but, rather, that it would make no difference because they would obtain a warrant. The record does not explain why Wilmart was told a warrant would be obtained rather than the truth, that one existed.

The explanation may rest in the officers' propensity to obscure the facts in an effort to obtain some perceived investigatory advantage, or may lie in the officers' belief, mistaken or otherwise, that something more was required before the warrant in their possession could be executed, just as the testifying officer was mistaken in his belief that Wilmart was not under arrest until she had been told that she was. Indeed, the very fact the officers sought Wilmart's consent to search rather than simply executing the warrant in their

possession raises a question as to exactly what they thought their authority was, particularly in view of the facts that the warrant recites it was based on information received at 11:45 p.m. of the very day the officers presented themselves at 9:30 p.m. to begin the search and that it did not specifically authorize a search of the locker assigned to Wilmart.

Under the circumstances, the district court's implied factual finding that absent the invalid consent, the search warrant in the officers' possession would not have been executed in such a manner as to discover and seize the vials in question cannot be said to be clearly wrong.

Accordingly, the ruling of the district court must be, and hereby is, affirmed.

AFFIRMED.