THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WALDA DAVEON CARDENAS, Defendant-Appellant.

Third District   No. 3—91—0777

Opinion filed October 27, 1992.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

Marc Bernabei, State's Attorney, of Princeton (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

Following a bench trial, the defendant, Walda Daveon Cardenas, was convicted of the unlawful possession with the intent to deliver more than 500 grams of cannabis (Ill. Rev. Stat. 1991, ch. 56½,

par. 705(e)). The defendant was sentenced to a term of three years' imprisonment in the Department of Corrections.

The defendant raises three issues on appeal: (1) whether defendant's motion to suppress evidence should have been granted because she was illegally detained beyond the time it took to issue a warning citation for traveling four miles over the speed limit; (2) whether the State failed to meet its burden of establishing that defendant voluntarily consented to the search of her vehicle; and (3) whether cutting open the gas tanks on defendant's vehicle exceeded the scope of her consent and was not supported by a showing of probable cause. We reverse because we find the State did not establish the defendant voluntarily consented to the search.

On March 10, 1991, the defendant was driving a pickup truck with Arizona license plates on Interstate 80 between the Princeton and Ladd exits when State Trooper James Lower pulled her vehicle over for speeding. Lower approached the truck and advised the defendant that she was traveling 69 miles per hour in a 65-mile-per-hour zone. Lower then requested her license. Lower testified he observed no other traffic violations. Lower said he observed a gas can in the back of the truck when he approached the vehicle. Lower ran a license check on the defendant's Arizona driver's license. He also ran a check for any outstanding warrants on the defendant's male passenger. Lower learned the defendant had a valid driver's license. He also learned her passenger had no record of conviction or outstanding warrants.

According to Lower, he then wrote a warning citation for speeding and also filled in a standard consent-to-search form for the defendant's truck. Before Lower gave the defendant the warning citation, two other State Troopers arrived to assist him. Three State police vehicles were then parked near the defendant's truck. Lower could not remember the exact location where the three vehicles were parked. However, the defendant testified that one of the police vehicles was parked in front of her truck and the other two were parked behind it.

All three State Troopers then walked to the defendant's vehicle. Two troopers stood next to the driver's side of the truck, and the other trooper stood by the passenger side. Lower then gave the defendant a warning citation and told her there was nothing more to the stop. However, Trooper Lower next proceeded to explain the problems the police had been experiencing on Interstate 80 with illegal drug transportation. Lower asked the defendant if she had any drugs or weapons in her vehicle. She said no. Lower then

asked the defendant if she would mind if he looked. She paused, looked at her passenger and answered, *"No, is that legal?"* Lower told her that it was legal and that they did it all the time. Lower showed her the consent form and explained that it was a voluntary consent form. The defendant signed the form.

According to the defendant, Lower told her that it did not matter whether or not she signed the form because a call had been made to the "D.A." and they would be taking her vehicle in either way. The defendant signed the form because she was frightened and felt she had no rights. The defendant did not think it mattered because she believed the truck would be searched whether she signed the form or not. At the time the defendant was asked to sign the form, she did not believe she was free to leave. The defendant testified that Lower did not raise his voice or threaten her.

After the consent form was signed, both the defendant and her passenger were subjected to a patdown search. After a police dog on the scene signalled the presence of a controlled substance, Lower asked the defendant to drive her truck to a service station down the highway. Lower advised her that if she did not do so, they would tow the truck in for further investigation.

At the service station, the pickup was raised on a car lift. The troopers then disconnected and cut apart the two gas tanks. Four separate aluminum containers holding 179 pounds of cannabis were discovered in the gas tanks.

Based on these facts, the trial court denied the defendant's motion to suppress the evidence. The trial court found the defendant initially refused to consent to the search. However, the trial court found that a subsequent voluntary consent to the search was ultimately given. In its written order, however, the trial court stated:

> "Trooper Lower's answer 'Yes, we do it all the time' to the question 'Is it legal?' was a truthful answer if he implied the question to be 'Is it legal to ask for consent to search?' or 'Is it legal to search with consent?'. The answer would be misleading and false if Trooper Lower understood the question to be 'Is it legal to search without consent or a warrant?'
>
> *If Cardenas thought she was impliedly asking 'Is it legal to search without consent or a warrant?', the answer 'Yes, we do it all the time' would be misleading, false and perhaps coercive."* (Emphasis added.)

After a stipulated bench trial, the defendant was found guilty of possession with intent to deliver more than 500 grams of cannabis. She was sentenced to a term of three years' imprisonment in the

Department of Corrections and ordered to pay $20,000 in fines and costs.

The defendant argues on appeal that, based upon the totality of the circumstances surrounding the encounter in this case, the trial court's finding that the consent was voluntary was manifestly erroneous. We agree. Therefore, we do not need to address the other arguments raised by the defendant.

■■ A search which is conducted pursuant to voluntary consent is one of the specifically established exceptions to the constitutional requirements of both a warrant and probable cause. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858, 93 S. Ct. 2041, 2043-44.) The search is permissible so long as the consent is voluntary. (*People v. Powell* (1991), 224 Ill. App. 3d 127, 135, 586 N.E.2d 589, 596.) The voluntariness of a consent to a police search depends upon the totality of the circumstances, and it is the State's burden to show, by a preponderance of the evidence, that the consent was voluntarily given. (*People v. Casazza* (1991), 144 Ill. 2d 414, 417, 581 N.E.2d 651, 653.) For the consent to be voluntary, "the consentor must have been under no duress or coercion, actual or implied, and the consent must have been unequivocal, specific, and freely and intelligently given." (*People v. Purchase* (1991), 214 Ill. App. 3d 152, 155, 573 N.E.2d 831, 833.) The determination of the trial court regarding the voluntariness of a consent will not be disturbed unless it is clearly unreasonable. *Casazza*, 144 Ill. 2d at 417-18, 581 N.E.2d at 653.

The State argues the consent in this case was clearly voluntary. It relies on the fact the consent form signed by the defendant stated:

> "I understand that I have the right to refuse to consent to the search described above and to refuse to sign this form.
>
> I further state that no promises have been made, nor have any threats, force, or physical or mental coercion of any kind whatsoever been used against me to cause me to consent to the search described above or to sign this form."

The State also contends an initial refusal does not necessarily mean that the consent was not voluntarily given. In addition, it relies on our recent decision in *People v. Sesmas* (1992), 227 Ill. App. 3d 1040, 591 N.E.2d 918.

We recognize other jurisdictions have concluded a prior refusal does not necessarily cause a subsequent consent to be involuntary. (See *United States v. Morrow* (4th Cir. 1984), 731 F.2d 233, 236; *State v. Green* (1990), 133 N.H. 249, 575 A.2d 1308, 1315; 3 W. La-

Fave, Search & Seizure §8.2(f), at 200-01 (2d ed. 1987).) Other jurisdictions have also found, however, that an initial refusal is a factor to consider in determining whether the subsequent consent is voluntary. (See *United States v. Pulvano* (5th Cir. 1980), 629 F.2d 1151, 1157; *State v. Wilmart* (1990), 234 Neb. 320, 324, 450 N.W.2d 703, 705-06.) We agree that an initial refusal is an important factor in assessing whether a subsequent consent is voluntary.

We also note that false or misleading information given by a police officer can vitiate the voluntariness of a consent to search. (See *Casazza*, 144 Ill. 2d at 424, 581 N.E.2d at 656; *People v. Daugherty* (1987), 161 Ill. App. 3d 394, 400, 514 N.E.2d 228, 232-33.) Consent is *not* voluntary when it is solely the product of acquiescence or submission to the assertion of lawful police authority. (*People v. Flagg* (1991), 217 Ill. App. 3d 655, 659, 577 N.E.2d 815, 818.) Also, the fact that a written consent form was signed is *not* dispositive when circumstances show that the signature was obtained by coercion. See *Purchase*, 214 Ill. App. 3d at 154-55, 573 N.E.2d at 832-33; *People v. Koniecki* (1985), 135 Ill. App. 3d 394, 402-03, 481 N.E.2d 973, 979-80.

■ Here, the defendant's vehicle was surrounded by three State Troopers following a routine traffic stop. When Trooper Lower asked if she would mind if he looked in her vehicle, the defendant said *"[n]o, is that legal?"* The trial court specifically found that this response was a denial of the request for a consent to the search. The trial court also determined that a subsequent voluntary consent was ultimately given. We note that while the trial court found the defendant had voluntarily signed the consent form, it also found that Trooper Lower's response to the defendant's questions *may have been "misleading, false and perhaps coercive."* It is apparent from the record that Trooper Lower's response did convey the false impression that it was legal to conduct a search, even without consent. Therefore, we conclude the defendant signed the consent form after being given the misleading information that it was legal to search and the officers did it all the time. Thus, she signed the consent form in acquiescence to an assertion of lawful police authority.

Based solely on Trooper Lower's version of events, we conclude the State did *not* meet its burden of showing that the consent was voluntarily given. The totality of the circumstances described clearly shows that the consent was not freely given but was the result of a coercive situation. Because the trial court found the defendant initially refused consent and that Lower's response to the

defendant's question "may have been misleading, false and perhaps coercive," we therefore conclude the trial court's determination that the consent was voluntary was clearly unreasonable.

We also conclude the State's reliance on *Sesmas* is misplaced. We recognize the facts of *Sesmas* are strikingly similar to the facts of this case. The traffic stop in *Sesmas* occurred on February 4, 1991, just a little more than a month prior to the stop in this case. The *Sesmas* vehicle was on Interstate 80 near Princeton and also was stopped by Trooper Lower. The vehicle in *Sesmas* also had Arizona license plates and a gas can in the back. A consent form was signed, the vehicle was towed to a service station, and cocaine and heroin were found in the gas tank of the vehicle. The trial court in *Sesmas* also denied the defendants' motion to suppress the evidence. We affirmed, finding, among other things, that the consent to the search was voluntary. *Sesmas*, 227 Ill. App. 3d at 1046-47, 591 N.E.2d at 922.

In *Sesmas*, however, when the driver was asked by Trooper Lower if she minded if he searched the car, she "had no objection, handed the keys to the officer and voluntarily exited the vehicle." (*Sesmas*, 227 Ill. App. 3d at 1043, 591 N.E.2d at 922.) She then signed the consent form after Trooper Lower explained that it was voluntary. *Sesmas*, 227 Ill. App. 3d at 1043, 591 N.E.2d at 920.

The driver in *Sesmas* immediately consented to the search and was not given any misleading information by Trooper Lower. We finally note in *Sesmas*, there were only two State Troopers on the scene rather than three. Based upon all of these factual distinctions, we clearly find *Sesmas* distinguishable.

For the reasons indicated, the judgment of the circuit court of Bureau County is reversed.

Reversed.

HAASE and STOUDER, JJ., concur.