NOTICE

Decision filed 10/12/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 140596

NO. 5-14-0596

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 12-CF-40 |
| | ) | |
| ROBERT KEVIN WALL, | ) | Honorable |
| | ) | John Speroni, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Schwarm and Justice Welch concurred in the judgment and opinion.

**OPINION**

¶ 1     After a stipulated bench trial in the circuit court of Williamson County, defendant, Robert Wall, was found guilty of production of cannabis sativa plants (720 ILCS 550/8(c) (West 2010)) and sentenced to 24 months' intensive probation as agreed upon by the parties and ordered to pay costs, including fines and fees. In this appeal, we find the trial court erred when it denied defendant's motion to quash arrest and suppress evidence and statements based upon involuntary consent to search his residence. Accordingly, defendant's conviction must be reversed and the cause remanded for further proceedings.

1

¶ 2                                    BACKGROUND

¶ 3    On November 16, 2011, at approximately 4:30 p.m. Officer Jeff Gill, a Carbondale police officer who was working with the Southern Illinois Enforcement Group (SEIG), went to defendant's home in Johnston City without a warrant because he suspected defendant might be involved in growing cannabis.  No one was home at the house, so he called defendant, a mechanic, who was at work.  Gill falsely represented to defendant that he was a member of the Illinois State Police and that someone tried to break into defendant's house.  Gill told defendant there were broken windows in the back of his house, and while he did not believe anyone entered into his house, the police had a suspect.  Those representations were also false.  Gill instructed defendant to come home immediately.

¶ 4    When defendant arrived home, he saw a large sports utility vehicle (SUV) parked in his driveway, a large cargo trailer in his front yard parked behind another vehicle, and approximately six people he did not know walking on his property and looking toward his windows.  The people on his property were SEIG officers, all of whom were wearing casual clothes with badges hanging around their necks or clipped to their belts.  All the officers were armed.  Officer Gill, who is 6 feet 6 inches tall and weighs 390 pounds, approached defendant, who is 6 feet 2 inches tall and weighs 180 pounds, and correctly identified himself as a Carbondale police officer affiliated with SEIG.  Gill told defendant his house had not been broken into and the police did not have any suspects, but the police were there because they had information that defendant was growing marijuana in his home.  Defendant asked Gill why he thought there was a growing operation in his

house, and Gill told him he was "on a list" and it was "good information." Gill asked defendant for permission to enter the house. Defendant asked Gill if he had a warrant.

¶ 5 Defendant described Gill as "a big individual" and said Gill was close to his face when he was talking to him. According to defendant, Gill was initially "calm, business like," but after defendant asked about a warrant, Gill became agitated and told defendant if he made him get a warrant defendant was going to jail and "it's going to go hard on you." Gill denied telling defendant he would go hard on him. However, according to defendant, Gill told him he knew he had a growing operation, and if he would consent for the police to search without a warrant, he would not have to go to jail. On the other hand, Gill testified that all he told defendant was if he cooperated and consented to the search, he would not go to jail *that* day.

¶ 6 Gill asked defendant to sign a voluntary consent form. The form was already filled out with defendant's name and address when Gill handed it to defendant. Defendant said he signed the form "to keep from going to jail." The form specifically states:

> "I understand that I have the right to refuse to consent to the search described above and to refuse to sign this form.
>
> I further state that no promises, threats, force, or physical or mental coercion of any kind whatsoever have been used to cause me to consent to the search described above or to sign this form."

3

Gill could not remember if he read the form to defendant or let defendant read it himself. Defendant testified he did not read the form, but merely glanced at it prior to signing it.

¶ 7 After defendant signed the form, Gill and the other officers entered defendant's residence, searched the home, and found both cannabis and cannabis plants. Defendant was arrested, and Gill read him his rights. Defendant gave a statement and was released. He was not transported to jail at that time.

¶ 8 On February 3, 2012, the State filed its two count complaint against defendant. On February 8, 2012, a judge signed an arrest warrant and set bail at $10,000. On February 21, 2012, defense counsel filed a motion for discovery and production of documents. Defense counsel later filed a motion to disclose confidential informant and a motion to quash arrest and suppress evidence and defendant's statement on the basis that the consent to search was involuntary.

¶ 9 After hearing arguments, the trial court denied defendant's motion to disclose confidential informant. The trial court held a hearing on defendant's motion to quash arrest and suppress evidence and statement. After the State presented its evidence, defendant moved for a directed finding, which the trial court denied. Defendant then testified on his own behalf. Ultimately, the trial court denied defendant's motion to quash arrest and suppress evidence and statement based upon involuntary consent to search.

¶ 10 Several months later, defendant filed a motion to quash arrest and suppress evidence and statement on the basis he was improperly placed in custody. The State filed a motion to strike. The trial court denied the State's motion to strike and called the

4

motion for hearing. The parties adopted all earlier arguments, case law, and testimony presented in connection with the previous motion to quash arrest and suppress evidence and statement based upon involuntary consent to search. Ultimately, the trial court denied defendant's second motion to quash arrest and suppress evidence and statement.

¶ 11    On August 11, 2014, a stipulated bench trial was conducted after which defendant was found guilty on count I. Count II was dismissed. The trial court ordered a sentence based upon an agreed disposition between the parties. Defendant filed a timely notice of appeal.

¶ 12                                    ANALYSIS

¶ 13    Defendant raises numerous issues on appeal. We first address defendant's contention that the trial court erred in denying his motion to quash arrest and suppress evidence and statements on the basis that consent to search was involuntary, as we find this issue dispositive. Defendant contends his consent was involuntary since Officer Gill led him to believe his only choice was to consent or be hauled off to jail. The State replies the trial court's finding that defendant voluntarily consented to the search of his home was not against the manifest weight of the evidence. After careful consideration, we agree with defendant that the ends did not justify the means and here the police officer's actions resulted in an unlawful search and seizure.

¶ 14    Both the United States and Illinois Constitutions protect an individual from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Within this context, reasonableness generally means a warrant, supported by probable

5

cause, is required. *Katz v. United States*, 389 U.S. 347, 357 (1967). Voluntary consent to search is an exception to the fourth amendment's warrant requirement. *People v. Kratovil*, 351 Ill. App. 3d 1023, 1030, 815 N.E.2d 78, 86 (2004). To be effective, however, the consent must be voluntary, meaning that it was given "absent any coercion, express or implied," and was not "the result of official coercion, intimidation, or deception." *Kratovil*, 351 Ill. App. 3d at 1030, 815 N.E.2d at 86. The voluntariness of the consent depends on the totality of the circumstances, and the State bears the burden of demonstrating consent was given voluntarily. *Kratovil*, 351 Ill. App. 3d at 1030, 815 N.E.2d at 86.

¶ 15 Initial refusal to consent to search is an important factor in assessing whether later consent is voluntary. *People v. Cardenas*, 237 Ill. App. 3d 584, 588, 604 N.E.2d 953, 956 (1992). The fact that a written consent form was signed is not dispositive in determining whether consent to search was voluntary when circumstances show the signature was obtained through coercion. *Cardenas*, 237 Ill. App. 3d at 588, 604 N.E.2d at 956. Voluntariness is a question of fact, and the trial court's finding that consent to search was voluntary will be reversed if it is against the manifest weight of the evidence. *People v. Martin*, 102 Ill. 2d 412, 426, 466 N.E.2d 228, 234 (1984).

¶ 16 A police officer's giving false or misleading information can vitiate the voluntariness of the consent. *Cardenas*, 237 Ill. App. 3d at 588, 604 N.E.2d at 956. An officer making a groundless threat and presenting the occupant of the home with the choice of either consenting or suffering the consequences of the threatened course of

conduct can also vitiate consent. *People v. Graf*, 265 Ill. App. 3d 746, 750-51, 638 N.E.2d 1181, 1184 (1994). Both transgressions occurred here.

¶ 17 In the instant case, police were acting on a tip from an unidentified confidential source that defendant was growing marijuana in his home. While we cannot say the trial court abused its discretion in denying defendant's motion to disclose the identity of the confidential informant, we can say the record is devoid of any evidence of exigent circumstances which precluded the State from obtaining a warrant. Instead of obtaining a warrant to search defendant's home, it is undisputed that Officer Gill used deliberate misstatements to get defendant to leave his job during working hours and return home.

¶ 18 Gill told defendant he was a trooper and he was at defendant's home investigating a possible break-in. When defendant arrived at his home, he was greeted by at least six armed SEIG agents. A large SUV and police trailer were parked on his property, and officers were looking toward defendant's windows. By all accounts, Officer Gill is an imposing figure at 6 feet 6 inches tall and 390 pounds. Defendant initially asked Gill if he had a warrant, meaning defendant initially refused to consent. After using deliberate misstatements to get him to come home, Gill made a veiled threat to defendant by telling him that if he did not sign the consent form he would go to jail. In addition to this veiled threat to defendant, Gill also made a promise to defendant that defendant would not go to jail if he signed the consent form. Gill, on the other hand, testified he only told defendant he would not go to jail on that particular day. Under either scenario, however, it is clear that Gill made a promise to defendant in order to obtain his consent.

7

¶ 19 In *Miranda v. Arizona*, 384 U.S. 436, 476 (1966), the Supreme Court stated, "[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver [of the fifth amendment privilege against self-incrimination] will, of course, show that the defendant did not voluntarily waive his privilege." While the instant case concerns consent to search rather than *Miranda* warnings, the same principle applies. Here, the evidence shows the police tricked, intimidated, and threatened defendant into signing a voluntary consent form. Thus, defendant's consent to search was involuntary, and all items seized and all statements subsequently made by defendant must be suppressed. In support of our finding, we rely on *People v. Casazza*, 144 Ill. 2d 414, 581 N.E.2d 651 (1991).

¶ 20 In *Casazza*, the police received information that shortly before a drowning incident, the victim consumed beer and drugs on a yacht with two older women. The police found a yacht matching the description they received. The yacht owner signed a consent to search form after police officers told him if he did not consent, they would obtain a warrant and require everyone on board to leave the yacht while the officers sought the warrant. Despite the fact the officers informed the owner of his right not to consent to the search, our supreme court upheld the suppression of evidence seized in the search, finding that the police officer's illegal representation that police possessed the authority to seize the yacht vitiated the owner's consent. *Casazza*, 144 Ill. 2d at 424, 581 N.E.2d at 656.

¶ 21 Here, the facts are much more egregious than *Casazza*. Officer Gill gave false information to get defendant to come home and sign a consent to search form that was

8

previously prepared. We agree with defendant that the fact Officer Gill could not remember whether he read the consent form to defendant or let defendant read it himself is important. The fact that Gill could not testify under oath as to how the consent form was presented to defendant should be construed in favor of defendant. Defendant was adamant he never read the consent form, he merely glanced at it. Officer Gill used both intimidation and deceit to get defendant to "voluntarily" consent.

> "This court, long prior to *Miranda*, held that confessions 'acquired by trick, promises, or threats' are inadmissible. *People v. Stevens* (1957), 11 Ill. 2d 21, 27.
>
> There is no difference in principle between the withholding of evidence favorable to a defendant and the wilful, knowing falsehood which tricked defendant into making the statement. *** The majority offers no explanation how, in the face of the falsehood, the waiver here could have been knowingly and voluntarily made. The reason, I submit, is obvious–because there is none." *Martin*, 102 Ill. 2d at 430, 466 N.E.2d at 236 (Goldenhersh, J., dissenting, joined by Ward and Simon, JJ.).

Under the circumstances presented here, we find the trial court erred in determining defendant voluntarily consented to a search of his home.

¶ 22                                    CONCLUSION

¶ 23    For the foregoing reasons, we reverse the trial court's denial of defendant's motion to quash arrest and suppress evidence and statements on the basis of voluntary consent. Accordingly, we reverse defendant's conviction and remand for further proceedings consistent with this opinion.

¶ 24     Reversed and remanded.

2016 IL App (5th) 140596

NO. 5-14-0596

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 12-CF-40 |
| | ) | |
| ROBERT KEVIN WALL, | ) | Honorable |
| | ) | John Speroni, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Opinion Filed:**      **October 12, 2016**

---

**Justices:**      Honorable Richard P. Goldenhersh, J.

Honorable S. Gene Schwarm, P.J., and
Honorable Thomas M. Welch, J.,
Concur

---

**Attorney for Appellant**      Mark A. Kochan, Kochan & Kochan, P.C., 121 West Cherry Street, Herrin, IL 62948

---

**Attorneys for Appellee**      Hon. Brandon Zanotti, State's Attorney, Williamson County Courthouse, Marion, IL 62959; Patrick Delfino, Director, David J. Robinson, Acting Deputy Director, Jennifer Camden, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Fifth District Office, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

---